IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEBRA D. GOODWIN,            ) | |
|         Plaintiff,               ) | |
| v.                                         ) | CIVIL ACTION NO. |
|                                     ) | 1:09-CV-1005-TFM |
| MICHAEL J. ASTRUE,       ) | |
|         Defendant.            ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*, Debra D. Goodwin ("Goodwin") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.   When the Appeals Council rejected review of this decision, it became the final decision of the Commissioner of Social Security ("Commissioner").  Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained,  the court AFFIRMS THE COMMISSIONER'S decision.

        **I.**        **STANDARD OF REVIEW**

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[1]

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[2]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.
[2] This subpart is also referred to as "the Listing of Impairments."
[3] Though a supplemental security income case (SSI), *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), applies the sequential process applicable to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or hear testimony from a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), quoting 42 U.S.C. §405(g).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v. Apfel*, 129 F.3d

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote* at 1560, citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm if the court would have reached a contrary result as finder of fact, or if evidence preponderates against the Commissioner's findings.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Goodwin, age 49 at the time of the hearings, completed the eleventh grade.[5] Her past relevant work includes employment as a poultry dresser and garment inspector.  She has not engaged in substantial gainful work activity since her alleged disability onset date

---

[5] Two administrative hearings were conducted in this case.  The second was convened after the ALJ asked Goodwin to undergo a consultative examination.

of March 30, 2007.[6]  Goodwin's application claims she is unable to work because of depression, "all over the body pain," and feeling that her legs will give way if she stands.[7]

During Goodwin's first administrative hearing she said that her adult sons bring her to live with them when she becomes very depressed.  On a typical day she is sitting down or laying down because she can't stand up for long.  She prepares simple meals like sandwiches or soup.  She is able to drive but when she does go shopping, she uses the motor chairs because of her weak legs.  Goodwin believes the problems with her legs began when a car knocked her from a riding mower in 2002.  Goodwin has Neurontin and Ultram prescriptions for pain.  Goodwin uses a cane to balance herself and rates the pain in her legs at seven.  She estimates she can stand for ten to fifteen minutes before her legs begin to hurt.[8]  Goodwin's depression is treated by a team at Spectra Care, where she sees Dr. Fernando Lopez every three months and participates in group counseling on a monthly basis.  She described her progress as "up and down."[9]  Goodwin said she shuts herself off, cries a lot, and finds it hard to be around large groups of people.  Goodwin claims her medications make her drowsy and sleepy, causing her to lie down during the day.[10]  Goodwin cancelled seven appointments for mental treatment between October, 2008 and April, 2009.[11]

A treatment note from Spectra Care shows Goodwin was improved and stable on current medications (Cymbalta and Trazodone) with no side effects on December 11,

---

[6] The ALJ decision uses August 30, 2006, Goodwin's original date of alleged onset.  Goodwin's counsel was granted permission to amend the alleged onset date to March 30, 2007.  R. at 57.
[7] R. at 151, 189.
[8] R. at 68-69.
[9] R. at 66.
[10] R. at 69-70.
[11] R. at 16; 25-26.

5

2008.[12]   On October 23, 2008, Dr. Lopez completed a checklist-type opinion of Goodwin's mental functioning.[13]   Dr. Lopez estimates Goodwin has moderate impairment in her ability to interact appropriately with the general public, ability to get along with co-workers, and restriction in daily activities.  Dr. Lopez checked marked impairment for Goodwin's ability to understand, remember and carry out simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule; make simple work-related decisions; and respond appropriately to changes in the work setting.  Dr. Lopez characterizes Goodwin's impairment as extreme regarding her ability to understand, remember and carry out complex instructions, or to complete a normal workweek without interruptions from psychologically based symptoms.

A consultative examination by Dr. Keith Vanderzyl found recurrent and chronic low back pain as a result of Goodwin's lawn mower accident, clinical reactive depression, and bilateral anterior knee pain ascribed to tight hamstring and Achilles tendon muscles.[14]   The ALJ found all three conditions produced a "more than minimal effect" on Goodwin's ability to perform work, and were therefore severe impairments.[15]   Dr. Vanderzyl's residual functional capacity (RFC) assessment found Goodwin can sit, stand, or walk for six hours in an eight-hour day, can continuously lift ten pounds/frequently lift up to twenty pounds, and can continuously reach, handle, finger, feel, push/pull with both hands, and use both feet to operate foot controls.  The RFC

---

[12] R. at 332.
[13] R. at 289-91.
[14] R. at 319-21.
[15] R. at 12-13.

assessment forbids Goodwin from climbing ladders/scaffolds, balancing, and frequently climbing stairs, stooping, kneeling, crouching or crawling.[16]  The ALJ gave Dr. Vanderzyl's findings great weight and adopted the RFC assessment.[17]

The ALJ began her discussion of the medical evidence with an acknowledgment of the two-step process in which an ALJ must determine whether an underlying medically determinable physical impairment could reasonably be expected to produce a claimant's pain or other symptoms, and second, the extent to which the intensity, persistence and limiting effects of the claimant's symptoms limit the ability to do basic work activities.  Essential in this process is the ALJ's consideration of the entire record, in addition to an evaluation of a claimant's credibility regarding these factors.[18]  The ALJ reviewed Goodwin's medical records which showed a history of complaints about knee and leg pain, but no history of treatment for lower back pain and no restrictions from her general care physician.[19]  The ALJ found the lack of restrictions from treating physicians to be inconsistent with Goodwin's claims of disabling symptoms.  The ALJ was aware of Goodwin's claim about her limited daily activities, but noted that they could not be objectively verified.  Further, the ALJ stated that, given "the relatively weak medical evidence and other factors," it is difficult not to attribute Goodwin's very limited activities to volitional reasons.[20]

---

[16] R. at 15, 322-27.
[17] R. at 15, 17.
[18] R. at 15.
[19] R. at 15.
[20] R. at 16.

The ALJ's review of Goodwin's mental status noted that the majority of her visits at Spectra Care were with a social worker and a registered nurse. Records show a total of five visits with Dr. Lopez from 2007 through March, 2009. The ALJ noted that Goodwin missed seven appointments at Spectra Care from late 2008 through early 2009. The Spectra Care records also show that Goodwin had not complained of adverse side-effects from medication. An opinion from Dr. Robert Estock, a State Agency psychiatric examiner, found Goodwin is capable of understanding, remembering, and carrying out simple instructions over an eight-hour work day, and can concentrate for two hour periods.[21] Walter Jacobs, Ph.D., performed a consultative examination on Goodwin on May 22, 2007. Dr. Jacobs "did not find persuasive evidence for a major anxiety disorder and diagnosed mild depression with a favorable prognosis if treated.[22] The ALJ found Dr. Lopez's opinion was inconsistent with the Spectra Care treatments which showed stability and improvement on current medications. The inconsistency between the records made the ALJ discount Dr. Lopez's opinion. The opinion by Dr. Estock was given great weight as the ALJ found it consistent with the medical records on a whole.[23]

The ALJ concluded Goodwin has medically determinable impairments which could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of the symptoms are not credible. The ALJ found Goodwin has the residual functional capacity (RFC) to perform tasks consistent with medium work, as limited by the RFC assessment submitted by Dr.

---

[21] R. at 17, 249.
[22] R. at 230, 231.
[23] R. at 17.

8

Vanderzyl.[24]  The mental limitations in Dr. Estock's report were used by the ALJ to limit Goodwin to work which only requires understanding, remembering, and carrying out simple instructions.[25]  The ALJ gave these RFC limitations to the vocational expert (VE) who testified during Goodwin's hearing.  The VE responded that a person so limited could work at a poultry plant.[26]

The ALJ found Goodwin is severely impaired by bilateral anterior knee pain, chronic low back pain, personality disorder, and depression, but that this combination of impairments does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.[27]  The ALJ found Goodwin is able to perform past relevant work as a poultry worker.[28]  The finding that Goodwin can return to past work led the ALJ to conclude she is not entitled to disability benefits under the Act.[29]

### III.  ISSUES

Goodwin raises two issues for judicial review:

1. Whether the ALJ erred in her consideration of the treating physician's opinion; and

2. Whether the ALJ correctly evaluated the evidence of subjective pain and suffering under the Eleventh Circuit pain standard.

### IV.  DISCUSSION

**1. The ALJ properly evaluated the treating psychiatrist's opinion.**

---

[24] R. at 14-15.
[25] R. at 17.
[26] R. at 28.
[27] R. at 12-14.
[28] R. at 17.
[29] R. at 17.  The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

Goodwin argues the ALJ failed to properly evaluate the opinion of her mental health from Dr. Fernando Lopez.  The Commissioner responds the ALJ demonstrated good cause to give little weight to Dr. Lopez's opinion.

The ALJ noted that most of Goodwin's contacts with mental health professionals at Spectra Care were with a social worker or registered nurse.  Goodwin had only five appointments with Dr. Lopez over the entire course of treatment from 2007 to 2009.  Dr. Lopez's opinion reflects several moderate and some extreme limitations in Goodwin's mental functioning on October 23, 2008, other records from December 11, 2008 show improvement and stability with no side effects from medication.  The ALJ decision also presented the findings of Dr. Robert Estock and Walter Jacobs, Ph.D.  Dr. Estock's conclusions were found consistent with the majority of the evidence and given great weight.

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'"  *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004), citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" is present where the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241*,* citing *Lewis.*  When assessing medical evidence, an "ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefore."  *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (per curiam).  Social security

regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question. *See* 20 C.F.R. § 404.1527(d)(1)-(6). "The weighing of evidence is a function of the factfinder, not of the district court. The question is not whether substantial evidence supports a finding made by the district court but whether substantial evidence supports a finding made by the Secretary." *Graham v. Bowen,* 790 F.2d 1572, 1575 (11th Cir. 1986).

During the administrative hearing, the ALJ questioned the length of Goodwin's treatment relationship with Dr. Lopez. The answer reveals Goodwin she had only five appointments with Dr. Lopez over nearly two and one-half years. The nature of the treating relationship is a specified consideration under the regulations cited above, and the Court notes that Goodwin cancelled several appointments with Spectra Care. The adoption of the Dr. Estock's opinion is also sustainable because the ALJ found it is consistent with the bulk of medical evidence, whereas the decision made clear that Dr. Lopez's opinion was not.

## 2. **The ALJ correctly evaluated the testimony of subjective pain and limitations under the Eleventh Circuit pain standard.**

Goodwin argues the ALJ misapplied the Eleventh Circuit's pain standard to her testimony about subjective pain and limitations. The Commissioner responds that the ALJ followed the correct steps to evaluate testimony of subjective pain and limitations, but simply did not find the testimony credible.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The Eleventh Circuit has set forth criteria to establish a disability based on testimony about pain and other symptoms. It explained that

> a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted). A "claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). An ALJ must explicitly explain why he chose not to credit a claimant's testimony. *Brown*, 921 F.2d at 1236. When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician and evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002).

Under *Wilson*, a claimant's subjective testimony can establish disability if it is sufficiently supported by medical evidence. *Brown* at 1236. An ALJ's credibility findings are an important factor in the application of the pain standard. *Wilson, id*. Here, the ALJ found Goodwin's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but credibility issues were plainly identified as barriers to satisfaction of the pain standard. The ALJ noted that no treating physician placed restrictions on Goodwin's physical activities. The lack of restriction was taken by the ALJ to call into question the actual reason for Goodwin's reported activities, and a factor in her conclusion that the limitation upon Goodwin's activities are voluntary and not due to medical problems.

The ALJ concluded that if Goodwin is totally disabled as alleged, there would be more medical treatment instead of relatively infrequent trips to her doctors. Goodwin's complaints of side effects were also discounted by the ALJ because her records did not show a history of complaints about medication. Indeed, treatment notes from December 11, 2008, show "zero" side effects. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing claimant's lack of consistent complaints, treatment, and use of pain medication in affirming ALJ's conclusion that "pain standard" was not met.); *see also Watson v. Heckler*, 738 F.2d 1169, 1172-73 (11th Cir. 1984) (noting that, when considering allegations of pain, an ALJ must weigh the overall record, including frequency of treatment, use of medications, and conflicting statements).

Further, the Court notes regulations at 20 C.F.R. § 404.1529(c)(4) permit an ALJ to consider inconsistencies or conflicts between a claimant's statements and other

evidence. *Osborn v. Barnhart*, 194 Fed. Appx. 654, 664-65 (11th Cir. 2006). Although the ALJ did not discuss this point, Goodwin's disability application unequivocally shows that she ceased work because of a plant shut down, rather than physical or mental limitations.[30] The Commissioner argues this information provides further support for denying benefits in this case. *See* 42 U.S.C. § 423(d)(2)(A) (unemployment for reasons other than the presence of a disabling impairment does not constitute a proper basis for the award of disability benefits; 20 C.F. R. § 404.1566(c) (the inability to work for reasons other than a disabling impairment is not a basis for a disability claim). Therefore, these authorities and Goodwin's application provide additional support for the ALJ's decision.

This Court must accept the ALJ's credibility finding, as the ALJ articulated explicit and adequate reasons for her finding. *Wilson, id*. Accordingly, there are no grounds for reversal of the Commissioner's decision in this case

### V. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

DONE this 15th day of November, 2010.

---

[30] R. at 151.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE